**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  19-62555-CIV-ALTMAN**

**JASON PHILLIPS**,

   *Plaintiff*,

vs.

**SC CAPITAL VENTURES, INC.** and
**SCOTT RENNINGER**.,

   *Defendants*.

_____/

## ORDER

Before the Hon. Roy K. Altman:

  The Plaintiff sued the Defendants for failing to pay him the overtime wages he was owed. Before even hiring a lawyer, the Defendants offered to resolve the case by paying the Plaintiff *the full amount* of his damages. But, hoping to prolong the litigation—and to pad his hours—the Plaintiff's lawyer rejected the Defendants' offer. The Defendants responded by hiring a lawyer solely for the purpose of filing a motion for judgment *in the Plaintiff's favor*. Having thus "prevailed," the Plaintiff's lawyer now seeks compensation for time he spent negotiating the amount of his attorneys' fees *after* he spurned the Defendants' offer of full compensation. This Order follows.

## THE FACTS

  The Plaintiff's Complaint alleged violations of the Fair Labor Standards Act (the "FLSA"). *See generally* Complaint [ECF No. 1]. In "such action[s]," the Court shall, "in addition to the judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

The Plaintiff, Jason Philipps, is represented by attorney Elliot Kozolchyk. *See* Report and Recommendation (the "Report") [ECF No. 25] at 5. Kozolchyk filed this lawsuit on behalf of Mr. Philipps on October 14, 2019. *See generally* Compl. Just one month later, on November 15, 2019, the Defendants, Scott Renninger and SC Capital Ventures, made the Plaintiff a settlement offer, in which they agreed to pay *the full amount* of his actual and liquidated damages— $1,898.82—as well as $1,000 in attorney's fees and costs. *See* Defs.' Response (the "Response") [ECF No. 14] at 1; Pl.'s Reply (the "Reply") [ECF No. 19] Ex. 1 (the "Emails") at 1–2; Pl.'s Objections to Report (the "Objections") [ECF No. 26] at 2. From the time the Complaint was filed to the time he rejected the settlement offer, Kozolchyk says he incurred $2,160 in attorney's fees and $672 in costs. *See* Objections at 2.

But Kozolchyk rejected the Defendants' attempt to settle the case for the full amount of the Plaintiff's damages and refused to submit a counteroffer. *See* Report at 6–7; Objections at 2; Emails at 1–5. He now repeatedly condemns that settlement offer—which, again, promised his client *every cent* he was seeking—as "unreasonable." *See* Objections at 2, 3, 4. Faced with Kozolchyk's intransigence, the Defendants took a bold, but clever, stand: they promptly moved for judgment *in the Plaintiff's favor*. *See* Motion for Judgment on the Pleadings [ECF No. 5].

After the Court granted that motion—which, it goes without saying, was unopposed—the Plaintiff filed (1) a Motion for Bill of Costs ("Motion for Costs") [ECF No. 9] and (2) a Motion for Attorneys' Fees ("Motion for Fees") [ECF No. 10].[1] By then, however, Kozolchyk's fees had ballooned from $2,160 (the amount as of the day of the settlement offer) to $3,040. Mot. for Fees ¶ 5. Somehow, in other words, Kozolchyk managed to bill $880—or almost 30% of all his work on the case—*after* the Defendants had already offered to settle the case for the full amount of the

---

[1] The Defendant opposes only the Motion for Fees.

Plaintiff's damages.

In his Report, Magistrate Judge Hunt recommended that both the Motion for Fees and the Motion for Costs be granted in part and denied in part, and that the Plaintiff be awarded $2,025 in fees and $465 in costs. *See* Report at 10. The Report arrived at these figures by concluding that Kozolchyk's hourly rate should be reduced from $400/hr to $375/hr,[2] *see id.* at 5, and that Kozolchyk should be awarded no fees for time billed *after* he rejected the settlement offer because "lawyers should not be compensated for turning the litigation about attorneys' fees into a 'second major litigation,'" *id.* at 7 (quoting *Ford v. Navika Capital Grp., LLC*, 2017 WL 1381668, at *11 (S.D. Ala. Apr. 17, 2017)). The Report also recommended reducing the Plaintiff's costs from $672 to $465, because the Plaintiff had provided no justification for charging more than the U.S. Marshals Service would have charged to serve the pleadings. *See id.* at 9.

In his Objections, the Plaintiff argues that the Report incorrectly deducted the time he billed *after* receiving the settlement offer because, he insists, that settlement offer was "unreasonable," Objections at 3, and because the hours he spent litigating the case *after* receiving the settlement offer were "reasonably incurred and properly compensable," *id.* at 5.

## THE LAW

A district court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." FED. R. CIV. P. 54(d). When a magistrate judge's

---

[2] This Court routinely refuses to award Kozolchyk more than $375/hr. *See, e.g.*, *Mehta v. IQlogg, Inc.*, No. 19-CIV-61823-ALTMAN/HUNT, ECF No. 15 (S.D. Fla. Oct. 11, 2019) ("The Court finds [Kozolchyk's requested] hourly rate of [$400/hr] somewhat excessive and concludes that a rate of $375.00 is more appropriate here." (citing *Echavarria v. Am. Valet Parking*, 2015 WL 12746113, at *2 (S.D. Fla. July 1, 2015) (finding that $375/hr is "at the high end of the range of rates charged in the Southern District of Florida for . . . FLSA lawyers"))).

"disposition" has been properly objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress' intent was to require *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## ANALYSIS

Because the Plaintiff objects only to the Report's calculation of his "reasonable hours incurred," this Court must review that portion of the Report *de novo*—and the balance for clear error. The parties' dispute raises two questions. *First*, is the Plaintiff's attorney entitled to any fees he incurred *after* the Defendant promised to pay the full amount of the Plaintiff's damages? *Second*, what portion of the fees the Plaintiff's lawyer incurred *before* that settlement offer are compensable?

### I.    Attorney's Fees

In his Report, the Magistrate judge correctly employed the lodestar method to compute the Plaintiff's "reasonable" attorney's fees. *See* Report at 3 (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). The Magistrate Judge thus multiplied

Kozolchyk's reasonable hourly rate by the number of hours Kozolchyk reasonably expended on the case. *See, e.g.*, *Loranger v. Stierheimi*, 10 F.3d 776, 781 (11th Cir. 1994).[3] The Court now undertakes that two-step analysis here.

          a.    *Reasonable Hourly Rate*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he applicant bears the burden of producing satisfactory evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *N.A.A.C.P. v. City of Evergreen, Ala.*, 812 F.2d 1332, 1338 (11th Cir. 1987). Courts in this District have noted that FLSA "cases are generally not complicated or highly risk-intensive." *Silva v. Miller*, 547 F.

---

[3] Before the "lodestar method" rose to prominence, courts used a "balancing approach" that applied the following twelve factors to determine a requested fee's reasonableness:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded . . . . It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying award of fees where counsel "leveraged a small sum [of damages] as a stepping-stone to a disproportionately large award of attorney's fees"). While the "lodestar method" has effectively replaced the "balancing approach," the Eleventh Circuit has held that the latter's factors "might be considered in terms of their influence on the lodestar amount." *Norman*, 836 F.2d at 1299.

Supp. 2d 1299, 1305 (S.D. Fla. 2008), *aff'd*, 307 F. App'x 349 (11th Cir. 2009).

Kozolchyk seeks $400/hr for his work in this case. *See* Mot. for Fees at 1. But the Magistrate Judge conducted an exhaustive review of the "balancing approach" factors—including Kozolchyk's experience in litigating FLSA actions, Kozolchyk's past fee awards in FLSA cases, Kozolchyk's own affidavit, and the nature and complexity of this case—before concluding that Kozolchyk's rate should be $375/hr. *See* Report at 5. This rate is in line with previous awards Kozolchyk has received in FLSA cases and matches precisely the most recent hourly rate this Court has ascribed to Kozolchyk. *See Mehta*, No. 19-61823-CIV at ECF No. 15. And, in fact, Kozolchyk does not object to the Report's recommendation with respect to this lower hourly rate. *See* Objections at 5.

This Court agrees that Kozolchyk's hourly rate should be $375/hr. This was, after all, a garden-variety FLSA case in which, less than a month after the Complaint was filed, the Defendants agreed to pay the Plaintiff's full damages. After that attempt at an early resolution proved fruitless, the Defendants admitted their liability in open Court and immediately moved for judgment in the Plaintiff's favor. For this reason, over the life of this entire case, Kozolchyk has filed only two motions: the motion for his fees and the motion for his costs. The Court, in short, has little trouble using $375/hr as Kozolchyk's reasonable hourly rate.

b.   *Reasonable Hours Expended*

In determining the "hours reasonably expended" on a case, a district court should exclude hours that were "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's

adversary *irrespective of the skill, reputation or experience of counsel.*" *Id.* "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350.

The Report concluded that Kozolchyk is entitled to compensation for each of the 5.4 hours he billed *before* he rejected the settlement offer. *See* Report at 9. The only portion of the Report to which the Plaintiff now objects—and, thus, the only portion this Court must review *de novo*—is its determination that Kozolchyk should receive no fees for the two hours he billed *after* he rejected the settlement offer. *See* Report at 8; Objections at 5.

As a general rule, the Eleventh Circuit has "said that an attorney may recover fees for time spent litigating the award of [his fees]." *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245 (11th Cir. 2003); *see also Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309 (11th Cir. 2001) ("A prevailing party is entitled to reasonable compensation for litigating a [fee] award. Additionally, post-judgment advocacy may generally be included in a [fee] award."). At the same time, however, "[l]awyers should not be compensated for turning the litigation about attorneys' fees into a 'second major litigation.'" *Thompson*, 334 F.3d at 1245 (quoting *Hensley*, 461 U.S. at 437). Applying these rules, a district court "may not entirely deny [litigants] the recovery of statutory fees (which we have said includes fees for litigating fees)." *Id.* Indeed, a "district court abuse[s] its discretion—as a matter of law—when it deduct[s] *all* the time attributed to [an attorney's] efforts to recover a fee." *Id.*; *see also Norman*, 836 F.2d at 1305–06. The question, then, is whether the fees Kozolchyk charged for "litigating fees" were "reasonably incurred."

On November 14, 2019, after speaking over the phone with the then-unrepresented

Defendants, Kozolchyk emailed them a settlement demand. *See* Emails at 4–5. That settlement demand was silent as to attorney's fees. *See id.* Just five hours later, the (rather astute) Defendants answered that they "can't tell [Kozolchyk] whether this is a good deal without knowing what happens with attorneys' fees . . . . Nothing about attorney fees are mentioned in the proposal." *Id.* at 3. But, rather than attempt to resolve the question once and for all, Kozolchyk responded by refusing to negotiate his fees:

> Regarding attorney's fees, after you settle Plaintiff's claims, and the Court approves the settlement, I'll confer with you in good faith to resolve Plaintiff's fees and costs. If we are unable to resolve Plaintiff's fees and costs without the Court's intervention, I'll file a motion for the Court to determine and award Plaintiff's fees and costs.

*Id.* The Defendants (again, rather shrewdly) countered that they "can't in good conscious [sic] make any deal without know[ing] the all-in settlement amount." *Id.* at 2. Parrying, Kozolchyk again refused to negotiate his fees, adding that the "settlement agreement can either say nothing about Plaintiff's fees and costs, or state that the parties agree to confer in good faith." *Id.* at 2. The Defendants responded as follows:

> Elliot – I know you can agree to fees now and when you submit to the courts they can accept or not…make an offer for all-in asap so we can get this resolved. I do not want to go past Monday with this still not resolved.
>
> I will start the process…Your Plaintiff claim - $1,898.82 plus your fees ($400 for filing and $600 for your time) – Total $2,898.82 would be my offer for all-in.

*Id.* at 1. Refusing (again) to negotiate in good faith, Kozolchyk wrote only that "Plaintiff does not accept Defendants' offer of $400 for costs and $600 for attorney's fees." *Id.*

Kozolchyk now asks the Court to reward him for this behavior. Despite unilaterally, and on numerous occasions, refusing to negotiate the amount of his fee, Kozolchyk seeks compensation for *every* hour he billed over the course of this *entire* litigation. But the Supreme Court has suggested that, when fee disputes can be easily resolved, district courts should not

encourage litigants to fight it out:

> Ideally, of course, litigants will settle the amount of a fee. *Where settlement is not possible*, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

*Hensley*, 461 U.S. at 437 (emphasis added). And, contrary to Kozolchyk's insinuations, settlement *was* (very) possible here. The Defendants, after all, specifically and repeatedly sought to resolve the "amount of [the] fee." *Id*. Their entreaties failed, not for lack of trying—or because the parties, in good faith, reached an impasse—but because Kozolchyk refused even to negotiate, presumably in the hope that, after he "file[d] a motion for the Court to determine and award Plaintiff's fees and costs," Emails at 3, the Court would award him a higher fee than he could otherwise obtain by negotiating, *see* Report at 8.

This is not the first time Kozolchyk has played this game. *See id.* at 7 (collecting cases). Quite to the contrary, in his exhaustive review of Kozolchyk's prior cases, the Magistrate Judge found several in which *federal judges in this District* have chastised Kozolchyk for attempting to "run up his bill" and "refus[ing] to settle a lawsuit after receiving a defense offer to pay the entire amount claimed by Plaintiff." *Id.* (citations omitted).

As the Report correctly points out, rubberstamping Kozolchyk's unreasonable fee-campaigns would create perverse incentives in future FLSA cases:

> The issue here is not the reasonableness of the hours expended, or even the reasonableness of the full amount sought. Instead, the issue is the unreasonableness of continued litigation when Plaintiff has been fully compensated and Defendants have agreed that reasonable fees and costs are owed. Counsel is now asking this Court to reward his unwillingness to negotiate by awarding him a fee that far exceeds the maximum he could ever have hoped for had he negotiated. To do so would discourage negotiation and encourage litigation . . . .

*Id.* at 8. Put another way, if FLSA lawyers knew that they could reject *full* settlement offers, pad their billing sheets by "litigating fees," and then be compensated for every hour they billed *after*

the offer was rejected, what incentive would they have to settle *any* case?

The Court will not reward Plaintiff's counsel for refusing to negotiate his fees in good faith, for wasting judicial resources, or for running up the score, as it were, on defendants who had done precisely what the system encourages them to do: resolve their disputes out of court. Lawyers in this District should "not be compensated for turning the litigation about attorneys' fees into a 'second major litigation.'" *Thompson*, 334 F.3d at 1245 (quoting *Hensley*, 461 U.S. at 437). Indeed, it is a "fundamental tenet" of the Southern District of Florida that counsel "be governed at all times by a spirit of cooperation, professionalism, and civility" and "work to eliminate disputes by reasonable agreement to the fullest extent permitted by the bounds of zealous representation and ethical practice." S.D. Fla. L.R. Introductory Statement. By failing even to negotiate his fees, Plaintiff's counsel has fallen woefully short of this standard.

***

Having found that the hours Plaintiff's counsel incurred were excessive, the Court must conduct a line-by-line, *de novo* review of the Plaintiff's billing sheet. Again, a "district court abuse[s] its discretion—as a matter of law—when it deduct[s] *all* the time attributed to [an attorney's] efforts to recover a fee." *Thompson*, 334 F.3d at 1245; *see also Norman*, 836 F.2d at 1305–06.

The settlement negotiations began with a phone call between Kozolchyk and the unrepresented Defendants on November 14, 2019. The Court will accept Plaintiff's counsel's representation that the call lasted 0.6 hours—and Kozolchyk will be compensated for that time. The Court will likewise compensate Plaintiff's counsel for the 0.8 hours he spent negotiating with the Defendants on the next day, November 15, 2019.

But the Court will not award Kozolchyk any fees for settlement negotiations that took place after November 15, 2019. After that day, Plaintiff's counsel did nothing but attempt to turn the issues regarding "attorneys' fees into a 'second major litigation.'" *Thompson*, 334 F.3d at 1245 (quoting *Hensley*, 461 U.S. at 437). As of 4:00 p.m. on November 15, 2019, Plaintiff's counsel had an offer to settle this case for the full amount of his client's damages. All that remained was for him to engage the Defendants' request to parley on the amount of his fees. Instead, he ran to the courthouse to get what *he hoped* would be a bigger reward. The Court will not encourage that kind of behavior.

The Court, in sum, will compensate Plaintiff's counsel for 5.4 hours of time, which includes every hour he billed from the start of the case through his final rejection of the Defendants' settlement offer.

## II.    Costs

The Plaintiff originally sought $672 in costs. *See* Motion for Costs at 6. Of these, however, $272 were for service of process. The Eleventh Circuit has been clear that, as a general rule, a Plaintiff may not recover process server fees that exceed the costs of having a U.S. Marshal effectuate service. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (finding that "a district court does not abuse its discretion in taxing private process server fees *that do not exceed the statutory fees* authorized in § 1921" (emphasis added)). The current rate for a U.S. Marshal to effectuate service is "$65 per hour (or portion thereof) for each item served." 28 C.F.R. § 0.114(a)(3).

Relying on this principle, the Magistrate Judge reduced the cost of service from $272 to $65—reasoning that the Plaintiff has provided no evidence that service took longer than one hour or that a deviation from the $65/hr rate was otherwise justified. *See* Report at 9. The Plaintiff

does not object to this reduction, and the Court finds no clear error in the Magistrate Judge's analysis. The Plaintiff shall therefore receive $465 in costs—$400 for the filing fee and $65 for service.

***

Accordingly, the Court hereby

**ORDERS AND ADJUDGES** that the Report and Recommendation [ECF No. 25] is **AFFIRMED AND ADOPTED** in full and as follows:

1. The Motion for Bill of Costs [ECF No. 9] is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiff shall recover $465 in costs.

2. The Motion for Attorneys' Fees [ECF No. 10] is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiff shall recover $2,025 in fees.

3. The Plaintiff shall thus recover a total award of $2,490, for which sum let execution issue.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 3rd day of June 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record